United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RED SHIELD INSURANCE COMPANY,

    Plaintiff,

  v.

BARNHILL MARINA & BOATYARD, INC., BARNHILL CONSTRUCTION COMPANY, and AUDLEY BARNIE BARNHILL,

    Defendants.

No. C 08-02900 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this federal maritime action, plaintiff Red Shield Insurance Company sued defendants Barnhill Marina & Boatyard, Inc., Barnhill Construction Company, and Audley Barnie Barnhill for damages incurred when an insured floating home ran aground and partially sunk during a low tide. Both sides now move for partial summary judgment. For the reasons stated below, plaintiff's motion is **DENIED**, and defendants' motion is **GRANTED**.

## STATEMENT

Plaintiff Red Shield is an insurance company which underwrites property insurance, including policies covering floating homes. Robert Schaff owned a floating home moored at the Barnhill Marina & Boatyard in Alameda, California. In 2003, he commenced a fifteen-year lease for berth E-3. Subsequently, he obtained a policy through Red Shield covering his floating home.

During a low tide on June 22, 2005, Schaff's home ran aground on accumulated silt and mud at one end of the berth and became partially submerged. Red Shield paid $159,667.74 to cover the property damage. In June 2008, it brought a subrogation action against Barnhill to recover the amounts paid to Schaff, plus attorney's fees and costs.

Defendants maintain that they are not responsible for the maintenance of the subsoil beneath the leased berths and had no duty to dredge the accumulated mud and silt. In his deposition, however, Audley Barnhill stated that he had undertaken dredging in parts of the marina in the past. He dredged once in the 1970's at the foot of dock B, around dock A in connection with work by the California Department of Transportation to retrofit the transbay tube in 2002 or 2003, and around dock C in April 2005 (Quinn Exh. A at 38–40). Additionally, he testified that shortly after the incident with Schaff's home, he dredged dock E, where the home was moored (*id*. at 43–44). There was additional dredging of berths E-2 and E-3 in early 2008 (*id.* at 42).

Both Barnhill and Schaff stated in their depositions that sometime before the June 2005 incident, Barnhill spoke to Schaff and suggested that he move his floating home approximately ten to twelve feet forward away from the shore to avoid the listing that sometimes occurred at low tide (Wirta Exh. A at 3; Quinn Exh. D at 34). Barnhill stated that the move would be minimally inconvenient and offered to take care of the logistics (Wirta Exh. A at 3). Schaff thought the move would be more complicated. He did not recall the defendants offering to arrange the logistics (Quinn Exh. D at 34–35). He declined to move his home and instead requested that Barnhill dredge the area around dock E (*id*. at 34, 145). According to Schaff, Barnhill said that it was difficult to obtain the proper permits, and he did not intend to dredge that area *(id*. at 145).

The marina is located on the navigable waters of San Francisco Bay so this action falls under our admiralty jurisdiction and maritime law applies. Exercise of federal admiralty jurisdiction does not, however, result in automatic displacement of state law. *Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 542 (1995). If there is no federal maritime precedent on the issue, federal courts apply state law unless it contravenes acts of Congress or

general principles of maritime law, or defeats the goal of national uniformity. *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) (*citing Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 339 (1973)). When evaluating alleged violations of rights rooted in state law, admiralty courts must "endeavor to determine the issues in accordance with the substantive law of the [s]tate." *Hess v. United States*, 361 U.S. 314, 319 (1960).

In 1980, the California Legislature enacted the Floating Homes Residency Law ("FHRL"), designed to protect occupants and owners of floating homes from several unique hazards associated with these types of dwellings. Cal. Civ. Code §§ 800.1–800.306. The FHRL requires marina owners to maintain common facilities in the marina in good working order, and allows tenants to bring an action against marina owners who fail to do so. Cal. Civ. Code §§ 800.21(d), 800.91. The FHRL applies in this case because there is no federal law on the issue, it does not directly conflict with general principles of maritime law, and its application would not defeat the goal of national uniformity.

The parties have filed cross-motions for partial summary judgment on the issue of whether the subsoil beneath Schaff's berth was a common facility under the FHRL.

**ANALYSIS**

Summary judgment is granted under FRCP 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**1.    RED SHIELD'S MOTION FOR SUMMARY JUDGMENT.**

Red Shield argues that there is no disputed material fact that the subsoil beneath Schaff's berth was common facility which, under the FHRL, Barnhill had a duty to maintain.

1  Defendants, however, submitted declarations from Audley Barnhill and Harbor Master Tony
2  Fraga stating that the only areas at the marina considered common facilities are the docks, gates
3  to the docks, the laundry room, the restroom, and shower (Wirta Exh. A at 5, 11). Red Shield
4  urges rejection of Barnhill and Fraga's assertions for three reasons.

5       *First*, Red Shield argues that the declarations should be rejected because they are
6  "sham" and an attempt to manufacture a disputed material fact. The Ninth Circuit has held
7  that a party cannot create an issue of fact by a declaration contradicting his prior deposition
8  testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). In his
9  deposition, Audley Barnhill, C.E.O. of the marina, testified as follows (Quinn Exh. A at 71–72):

> Q: Any other items that the marina is responsible for?
>
> A: Just what's on the dock, from the dock — anything on the docks is the marina's responsibility
>
> Q: What about the berth itself, the water, what's underneath the water, whose responsibility is that?
>
> A: For what? For the water?
>
> Q: Yeah, for anything, for the water. I mean what's underneath? The homeowner is responsible for tying up their floating home. They've leased a berth. Who is responsible for the water —
>
> Q: Probably God.
>
> A: — and what's underneath? Is that the marina's or the tenant's?
>
>         \*        \*        \*
>
> Q: THE WITNESS: Well, I don't quite get the meaning of responsibility of the water on the bottom.
>
> Q: MS. QUINN: Well, let me rephrase. Who owns that?
>
> A: Well, the marina.

     Here, Barnhill's deposition testimony is ambiguous and does not directly contradict the assertions in the declaration about areas considered common facilities. He stated that the marina owns the land underneath the berth, but he did not state that it is maintained as a common facility. Therefore, the Court will not reject the declarations as an attempt to manufacture disputed facts.

4

*Second*, Red Shield argues that Barnhill waived the right to deny that the subsoil is a common facility because it failed to define the term in the lease. The FHRL does not define common facility, though § 800.21(d) requires that all floating-home leases contain a provision stating that "it is the responsibility of the management to provide and maintain physical improvements in the common facilities in good working order and condition." Additionally, § 800.21(e) requires that the lease include "a description of the physical improvements to be provided the homeowner during his or her tenancy." Although Schaff's lease did not contain such language, Barnhill's failure to comply with these provisions does not translate to a concession that an area is a common facility. That would be too draconian.

Under Red Shield's proposed interpretation, a marina owner who failed to include a list of common facilities in the lease could be held responsible for repair and maintenance of any area that a tenant homeowner happened to claim was a common facility. Failure to comply with §§ 800.21(d) & (e) does not, however, create the type of broad-based liability for marina owners that Red Shield suggests. Section 800.21(d) does not require that the marina owner define the common facilities, or that any specific common facilities be provided to tenants in the marina. It only requires that *existing* facilities be kept in good working order. Likewise, § 800.21(e) only requires that any additional physical improvements to be provided during the tenancy must be listed in the lease. Presumably, if a marina owner does not intend to provide any additional physical improvements, they need not list any.

Additionally, the penalties outlined in the FHRL contemplate a narrower scope of liability for marina owners than Red Shield advocates. Section 800.201 provides that a marina owner who fails to maintain common facilities can be liable in a civil nuisance action, and § 800.200 provides that a party prevailing in an action under the FHRL can recover costs and reasonable attorney's fees. Nothing in the statute supports charging a marina owner with responsibility for maintenance of an area based on a failure to list or define common facilities and a tenant's assertion of liability.

*Third*, Red Shield claims the defendants should be equitably estopped from denying that the subsoil is a common facility because they dredged certain areas of the marina in the past.

5

Under California law, equitable estoppel prevents a party from "deny[ing] the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Cox v. Ocean View Hotel Co.*, 533 F.3d 1114, 1123 (9th Cir. 2008) (*citing Aerojet-Gen. Corp. v. Commercial Union Ins*. Co, 65 Cal. Rptr. 3d 803, 814 (Cal Ct. App. 2007)). In order to apply the doctrine:

> (1) the party to be estopped must be apprised of the facts;
> (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.
> *Aerojet-Gen.,* 65 Cal. Rptr. 3d at 814.

Viewing the record most favorably for the opposing party, the facts in this case do not support the application of equitable estoppel. Barnhill's dredging efforts were sporadic. He dredged once in the 1970's around dock B, sometime in 2002 or 2003 in connection with work being done by the California Department of Transportation on the transbay tube, and around dock C in 2005. There is no evidence that he engaged in dredging as part of a regular maintenance program that marina residents had come to rely on to protect their homes.

Additional evidence in the record shows that Schaff did not have a right to rely on the dredging to protect his home from damage during low tides. Barnhill told Schaff he should move his home forward on the dock by ten to twelve feet, away from the accumulated silt and mud (Wirta Exh. A at 3; Quinn Exh. D at 34). Also, Schaff admitted that Barnhill told him that it did not intend to dredge dock E because it would be difficult to obtain the required permits (Quinn Exh. D at 145). Therefore, plaintiffs cannot estop Barnhill from denying that the subsoil was a common facility.

In sum, Red Shield's attempts to discount Barnhill and Fraga's declarations are unpersuasive. In addition, as discussed below, Red Shield fails to offer sufficient evidence countering the declarations and demonstrating a genuine issue of material fact as to whether the subsoil beneath Schaff's berth is a common facility. Accordingly, Barnhill is entitled to a judgment as a matter of law.

6

### 2. BARNHILL'S MOTION FOR SUMMARY JUDGMENT.

Barnhill argues that there are no disputed material facts demonstrating that the subsoil beneath Schaff's berth was a common facility that it had a duty to maintain, and that it is entitled to judgment as a matter of law. In addition to declarations describing what areas of the marina it considers common facilities, Barnhill notes that unlike areas frequently considered to be common facilities such as walkways, tennis courts and swimming pools, the subsoil beneath Schaff's berth was not accessible to other residents of the marina. Additionally, absent an emergency, the management of the marina has only a limited right to enter a leased berth. *See* Cal. Civ. Code § 800.32. Red Shield counters that Barnhill's conduct, *i.e.*, dredging certain areas of the marina, creates a genuine issue of material fact as to whether Barnhill was responsible for maintaining the subsoil in the marina as a common facility.

Contrary to Red Shield's assertions, the limited history of dredging does not preclude summary judgment for Barnhill. There is no evidence in the record showing that Schaff's berth had ever been dredged prior to his entering into a lease in 2003, or that Barnhill made any assurances that it would dredge the berth in the future. In fact, Schaff admitted in his deposition that Barnhill told him that he did not intend to dredge dock E. Moreover, the limited dredging in other areas of the marina could have been done based on individual agreements with the affected homeowners, as opposed to a broader effort to maintain common facilities in the marina. Because Barnhill's conduct does not establish a genuine issue of material fact as to whether the subsoil beneath Schaff's berth is a common facility, defendants are entitled to entry of summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is **DENIED**. Defendants' motion is **GRANTED**, and partial summary judgement will be entered for the

7

defendants as to the Fourth Cause of Action, relating to liability under the California Floating Home Residency Law.

**IT IS SO ORDERED.**

Dated: May 21, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8